| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Thomas B. Ure**<br>**800 West 6th Street., Suite 940**<br>**Los Angeles, CA 90017**<br>**213-202-6070 Fax:  213-202-6075**<br>**170492**<br>**tom@urelawfirm.com** | |

☑ Attorney for Movant
☐ *Movant appearing without attorney:*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

**Alvaro A. Bautista**

CASE NO.: **2:16-bk-17571-BR**

CHAPTER: **11**

### NOTICE OF MOTION AND
### MOTION FOR ORDER DETERMINING
### VALUE OF COLLATERAL
### [11 U.S.C. § 506(a), FRBP 3012)

This motion is being made under **ONLY ONE** of the following notice procedures:
☐ **No hearing unless request under LBR 9013-1(o)(4);**
☑ **Hearing set by Movant: LBR 9013-1(d);**
☐ **Hearing set on Shortened Notice: LBR 9075-1(b); or**
☐ **Hearing on Emergency Basis: LBR 9075-1(a).**

| Date: | **December 13, 2016** |
|---|---|
| TIME: | **10:00 a.m.** |
| COURTROOM: | **1668** |
| PLACE: | **255 E. Temple Street** |
| | **Los Angeles, CA 90012** |

Debtor(s)

**Creditor Name** (*Insert name of creditor holding collateral to be valued*):   __Bank of America, N.A.__

1.     **PLEASE TAKE NOTICE THAT** ____Debtor Alvaro A. Bautista____ (Movant) requests an order valuing the collateral described below. This motion does not request lien avoidance (see LBR forms F 4003 for lien avoidance involving principal residences and judicial liens).

2.     **NOTICE PROVISIONS AND DEADLINES FOR FILING AND SERVING A WRITTEN RESPONSE:** Your rights might be affected by this Motion. You may want to consult an attorney. Refer to the box checked below for the deadline to

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2013                                                   Page 1                            **F 3012-1.MOTION.VALUATION**

file and serve a written response. If you fail to timely file and serve a written response, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief. You must serve a copy of your opposition upon the Movant and the Movant's attorney and the United States trustee, and also serve a copy on the judge pursuant to LBR 5005-2(d) and the Court Manual.

a. ☐ **No Hearing Scheduled; Notice Provided Under LBR 9013-1(o):** This Motion is filed by the Movant pursuant to LBR 9013-1(o), which provides for granting of motions without a hearing. The full Motion is attached, including the legal and factual grounds upon which the Motion is made. If you wish to oppose this Motion, you must file a written response and request for hearing with the court and serve it as stated above **no later than 14 days after the date stated on the Proof of Service of this Motion** plus 3 additional days if you were served by mail, electronically, or pursuant to F.R.Civ.P. 5(b)(2)(D), (E), or (F).Your opposition must comply with LBR 9013-1(f) and (o).

b. ☑ **Hearing Set by Movant; Notice Provided Under LBR 9013-1(d):** This Motion is set for hearing on at least 21 days of notice pursuant to LBR 9013-1(d). The full Motion and supporting documentation are attached, including the legal and factual grounds upon which the Motion is made. If you wish to oppose this Motion, you must file a written response with the court and serve it as stated above **no later than 14 days prior to the hearing.** Your response must comply with LBR 9013-1(f). The undersigned hereby verifies that the hearing date and time selected were available for this type of Motion according to the judge's self-calendaring procedures [LBR 9013-1(b)].

c. ☐ **Hearing Requested on Shortened Notice under LBR 9075-1(b):** Movant has filed a separate motion asking the court to set a hearing on shortened notice, titled Application for Order Setting Hearing on Shortened Notice (Application). If the court grants the Application, the Movant will serve you with another document providing notice. The deadline to file and serve a written response will be contained in this document. If the court denies the Application, the Movant will provide written notice of a regular hearing date or other proposed disposition of this motion.

d. ☐ **Hearing Requested on Emergency Basis under LBR 9075-1(a): Hearing Requested on Emergency Basis under LBR 9075-1(a)**: Movant has contacted the court and requested an emergency hearing on less than 48 hours notice. If the court grants the request, you will receive a separate Notice of Hearing that identifies the deadline for the Movant to file and serve the Motion and the deadline for you to file and serve a written response. If the court denies the request to set an emergency hearing, the Movant will provide written notice of a regular hearing date or other disposition of this motion and the deadline for filing an opposition.

Date: **11/22/16**

By: **/s/ Thomas B. Ure**

*Signature of Movant or Attorney for Movant*

Name: **Thomas B. Ure**

*Print Name of Movant or Attorney for Movant*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*          Page 2          **F 3012-1.MOTION.VALUATION**

## MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL
## PURSUANT TO 11 U.S.C. § 506(a) AND FRBP 3012

**1. The Movant is (check one):**

- ☑ The debtor
- ☐ A creditor
- ☐ The Official Committee of Creditors Holding Unsecured Claims
- ☐ Others (specify): _____

**2. The Collateral to be Valued:**

a. The Movant requests a determination of the value of the following collateral (Collateral).

☑ Real Property
*Street Address:* **8818 Compton Ave.**
*Unit Number:*
*City, State, Zip Code:* **Los Angeles, CA 90002**

Legal description or document recording number (including county of recording):
**THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:
Lot 130, of Putney Place, in the County of Los Angeles, State of California, as per map recorded
in Book 12 Pages 124 of Maps, in the office of the County Recorder of said county.
Except therefrom all minerals, gas, oil, petroleum, naphtha and other hydrocarbon substances,
in and under said land lying below a depth of 500 feet from the surface, without however the
right of surface entry, as reserved or excepted in a deed recorded November 4, 1969 as
Instrument No. 1316.**

☐ Personal Property
   ☐ Vehicle
    *Year, manufacturer, type, and
    model:*
    *Vehicle Identification Number:* _____
    *Location of vehicle (if known):* _____

   ☐ Equipment:
    *Manufacturer, type, and
    characteristics:*
    *Serial number(s):* _____
    *Location (if known):* _____

   ☐ Other Personal Property (describe type, identifying information, and location):

    _____
    _____

☐ See attached page.

b. Purpose of the Valuation

☑ Treatment of the claim in a plan:

   ☐ Pursuant to 11 U.S.C. § 1322

   ☑ Pursuant to 11 U.S.C. § 1129

   ☐ Other
     : _____

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*                    Page 3                    **F 3012-1.MOTION.VALUATION**

c. Movant asserts that the value of the Collateral is $ __230,000.00__ as of (date): __6/7/16__

Check One:

☑ Date bankruptcy case was commenced.

☐ Other(specify): _____

## 3. Liens Encumbering the Collateral:

The Collateral is subject to the following liens in the amounts specified securing the debt against the Collateral:

| Names of Lien Holders in Order of Priority | Original Lien Amount | Balance of Lien Amount As of (applicable date) 6/7/16 |
|---|---|---|
| 1st Lien:  Bank of America, N.A. | $ 444,000.00 | $ 214,080.86 |
| 2nd Lien: Bank of America, N.A. | $ 111,000.00 | $ 111,000.00 |
| 3rd Lien: | $ | $ |

☐ See attached page for additional lien(s).

## 4. Determination of Secured/Unsecured Status:

Based upon paragraphs 2 and 3 above, Movant asserts the following:

| Names of Lien Holders in Order of Priority | Secured Portion of the Claim | Unsecured Portion of the Claim |
|---|---|---|
| 1st Lien:  Bank of America, N.A. | $ 214,080.86 | $    0.00 |
| 2nd Lien:  Bank of America, N.A. | $   15,919.14 | $ 95,080.86 |
| 3rd Lien: | $ | $ |

☐ See attached page for additional lien(s).

## 5. Evidence in Support of Motion:

a.  Evidence establishing the value of the Collateral:
   ☑ Declaration of the debtor as owner of the Collateral
   ☐ Declaration of the expert witness
      ☐ Certified appraiser
      ☐ Other: _____
   ☐ Declaration of a party who can authenticate a market report e.g. Kelley Blue Book) pursuant to F.R.Evid. 803(17).
   ☐ Other:

b.  Evidence establishing the amount of the claims related to the liens encumbering the Collateral
   ☑ Declaration of the debtor as owner of the Collateral
   ☐ Declaration of a witness authenticating a document that is an admissible statement of a party opponent (e.g. proof of claim or a recent loan statement) pursuant to F.R.Evid. 801(d)(2).
   ☐ Other:

c.  Evidence establishing the priority of the lien encumbering the Collateral
   ☑ Declaration of the debtor as owner of the Collateral
   ☐ Other:

d.  ☐ Other evidence (specify):

**Based upon the foregoing, Movant requests that this Court value the Collateral as listed in paragraph 2.c. above and that the claims related to the liens encumbering the Collateral, listed in paragraph 3 above, are determined to be secured or unsecured as requested in paragraph 4 above.**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2013                                   Page 4                        F 3012-1.MOTION.VALUATION

☑ See attached continuation page for additional provisions.

Respectfully submitted,

Date:  **11/22/2016**

By:  **/s/ Thomas B. Ure**
        *Signature of Movant or Attorney for Movant*

Name:  **Thomas B. Ure**
            *Printed Name of Movant or Attorney for Movant*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*                                    Page  5                          **F 3012-1.MOTION.VALUATION**

## DECLARATION OF THE DEBTOR AS OWNER OF THE COLLATERAL IN SUPPORT OF
## MOTION FOR ORDER TERMINING VALUE OF COLLATERAL

1. I, (*state debtor's name*) __Alvaro A. Bautista__ declare that I am the debtor in this bankruptcy case.

2. I make this declaration of my own personal knowledge and if called as a witness, could and would testify thereto.

3. I am the owner of the collateral listed in paragraph 1 of the Motion for Order Determining Value of Collateral to which this declaration is attached.

4. My opinion of the value of the Collateral is $__230,000.00__ as of (*applicable date*) __6/7/16__ based upon my personal knowledge, including but not limited to:

    ☐ Review of an appraisal (do not attach).
    ☑ Knowledge of comparable sales (do not attach).
    ☐ Other: _____

5. As of (applicable date), the Collateral is subject to the following liens in the amounts specified securing the debt against the Collateral:

| Names of Lien Holders in Order of Priority | Original Lien Amount | Balance of Lien Amount As of (state applicable date) 6/7/16 |
|---|---|---|
| 1st Lien:  Bank of America, N.A. | $ 444,000.00 | $ 214,080.86 |
| 2nd Lien: Bank of America, N.A. | $ 111,000.00 | $ 111,000.00 |
| 3rd Lien: | $ | $ |

The foregoing balances are established by true and correct copies of filed proofs of claim, or recent loan statements, or other documents attached to this declaration as Exhibit A.

6. The purpose of the valuation is to provide for treatment of the claim of:

| Names of Lien Holders in Order of Priority | Secured Portion of the Claim | Unsecured Portion of the Claim |
|---|---|---|
| 1st Lien:  Bank of America, N.A. | $ 214,080.86 | $     0.00 |
| 2nd Lien:  Bank of America, N.A. | $  15,919.14 | $ 95,080.86 |
| 3rd Lien: | $ | $ |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

*Signature*
**Alvaro A. Bautista**
*Printed Name*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*    Page 6    **F 3012-1.MOTION.VALUATION**

## DECLARATION OF ALVARO A. BAUTISTA

I, ALVARO A. BAUTISTA, hereby declare as follows:

1.      I am the Debtor in United States Bankruptcy Court Case Number 2:16-bk-17571-BR. I have personal knowledge of the facts stated herein and, if called upon to testify thereto, I could and would do so competently and truthfully.

2.      I am the owner of the real property commonly known as 8818 Compton Ave., Los Angeles, CA 90002 (hereinafter "the Property").

3.      The Property is subject to a note and First Deed of Trust in favor of Bank of America, N.A. ("FIRST TRUST DEED CLAIM"). I have been informed and believe the outstanding balance on said loan, as of the filing of my petition, was $214,080.86. Attached hereto, marked as Exhibit "A", is a true and correct copy of a proof of claim (without pages 47 through 58 which are not relevant to this motion) from the FIRST TRUST DEED CLAIM which was filed in this case on October 26, 2016.

4.      The Property is further encumbered by a Second Trust Deed in favor of Bank of America, N.A. ("SECOND TRUST DEED CLAIM"). I have not received any statements from Bank of America in over 10 years. No Proof of Claim has been filed on behalf of the SECOND TRUST DEED CLAIM as of the date of this declaration. The original balance on the loan was $111,000.00. Due to years of nonpayment on the loan, the balance must be higher than the original loan amount.

5.      The FIRST TRUST DEED CLAIM is based on a Deed of Trust recorded on December 31, 2007 as instrument number 20072862277. Please refer to the Deed of Trust attached to the Proof of Claim (Exhibit "A") at page 20.

6.      The SECOND TRUST DEED CLAIM is based upon a Deed of Trust recorded on December 31, 2007 as instrument number 20072862278. Please see Exhibit "B" true and correct copy of the recorded deed of trust for the SECOND TRUST DEED CLAIM.

///

///

///

1        7.      Due to the fact that the FIRST TRUST DEED CLAIM was recorded prior to the

2 SECOND TRUST DEED CLAIM, it has senior position.

3       I certify under penalty of perjury under the laws of the United States of America that the

4 foregoing is true and correct.

5       Executed this 22nd day of November, 2016, at Los Angeles, California.

6

7                                    Alvaro A. Bautista
                                   Debtor

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Alvaro A Bautista |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California (State) |
| Case number | 2:16-bk-17571-BR |

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. | Who is the current creditor? | BANK OF AMERICA, N.A.<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor |
| 2. | Has this claim been acquired from someone else? | ☒ No<br>☐ Yes. From whom? |
| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent?<br><br>Bank of America<br>Name<br><br>PO BOX 31785<br>Number Street<br><br>Tampa FL 33631-3785<br>City State Zip Code<br><br>Contact phone 1.800.669.6607<br><br>Contact email | Where should payment to the creditor be sent? (if different)<br><br>Bank of America, N.A.<br>Name<br><br>PO BOX 660933<br>Number Street<br><br>Dallas TX 75266-0933<br>City State Zip Code<br><br>Contact phone 1.800.669.6607<br><br>Contact email |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one): |
| 4. | Does this claim amend one already filed? | ☒ No<br>☐ Yes. Claim number on court claims registry (if known) _____ Filed on _____<br>MM / DD / YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☒ No<br>☐ Yes. Who made the earlier filing? |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|-------------------------------------------------------------------|

**6.** Do you have any number you use to identify the debtor?

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor.      ******6776

**7.** How much is the claim?    $ 214,080.86      Does this amount include interest or other charges?

☐ No
☒ Yes.    Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Recorded Mortgage

**9.** Is all or part of the claim secured?

☐ No
☒ Yes.  The claim is secured by a lien on property.

Nature of property:

☒ Real estate  If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe      8818-8818 1/2 S COMPTON AVE LOS ANGELES, CA 90002

Basis for perfection:    Recorded Mortgage

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for Example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                          $
Amount of the claim that is secured  $   214,080.86
Amount of the claim that is unsecured:                        $   0.00        (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:        $   9,201.82

Annual Interest Rate (when case was filed)        2        %
☒ Fixed
☐ Variable

**10.** Is this claim based on a lease?

☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.        $

**11.** Is this claim subject to a right of setoff?

☒ No
☐ Yes.  Identify the property.

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ _____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorized courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   10/26/2016
                   MM  /  DD  /  YYYY

**Todd S. Garan**

Digitally signed by Todd S. Garan
DN: cn=Todd S. Garan, o=Aldridge Pite, LLP, ou=Bankruptcy,
email=tgaran@aldridgepite.com, c=US
Date: 2016.10.26 15:27:06 -07'00'

Signature

Print the name of the person who is completing and signing this claim:

| Name | Todd S. Garan | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

Title        Attorney (SBN 236878)

Company      Aldridge Pite, LLP
             Identify the corporate servicer as the company if the authorized agent is a servicer.

Address      4375 Jutland Drive, Suite 200
             P.O. Box 17933
             Number        Street

             San Diego, CA 92177-0933
             City                          State      ZIP Code

Contact phone   (858) 750-7600              Email   TGaran@aldridgepite.com

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|
| Case number: 2:16-bk-17571-BR | Principal balance: 209,686.73 | Principal & interest due: 4,405.86 | Principal & interest: 734.31 |
| Debtor 1: ALVARO A BAUTISTA | Interest due: 2,177.09 | Prepetition fees due: 33.00 | Monthly escrow: 440.78 |
| Debtor 2: | Fees, costs due: 33.00 | Escrow deficiency for funds advanced: 3,213.16 | Private mortgage insurance: 0.00 |
| Last 4 digits to identify: 6 7 7 6 | Escrow deficiency for funds advanced: 3,213.16 | Projected escrow shortage: 2,578.92 | Total monthly payment: 1,175.09 |
| Creditor: BANK OF AMERICA, N.A. | Less total funds on hand: − 1,029.12 | Less funds on hand: − 1,029.12 | |
| Servicer: BANK OF AMERICA N.A. | Total debt: 214,080.86 | Total prepetition arrearage: 9,201.82 | |
| Fixed accrual/daily simple interest/other: Fixed accrual | | | |

## Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
| 05/01/2015 | 1540.57 | | | Monthly Assessment | | 1540.57 | 0 | 0 | 0 | 0 | 0 | 212742.42 | 0 | (4 373.87) | 36.71 | 0 |
| 05/01/2015 | | | 18 | RECORDING FEES | | 1540.57 | 0 | 0 | 0 | 18 | 0 | 212742.42 | 0 | (4 373.87) | 54.71 | 0 |
| 05/16/2015 | | | 36.71 | Assessed Late Charge | | 1540.57 | 0 | 0 | 0 | 36.71 | 0 | 212742.42 | 0 | (4 373.87) | 91.42 | 0 |
| 06/01/2015 | 1540.57 | | | Monthly Assessment | | 3081.14 | 0 | 0 | 0 | 0 | 0 | 212742.42 | 0 | (4 373.87) | 91.42 | 0 |
| 06/16/2015 | | | 36.71 | Assessed Late Charge | | 3081.14 | 0 | 0 | 0 | 36.71 | 0 | 212742.42 | 0 | (4 373.87) | 128.13 | 0 |
| 07/01/2015 | 1540.57 | | | Monthly Assessment | | 4621.71 | 0 | 0 | 0 | 0 | 0 | 212742.42 | 0 | (4 373.87) | 128.13 | 0 |
| 07/16/2015 | | | 36.71 | Assessed Late Charge | | 4621.71 | 0 | 0 | 0 | 36.71 | 0 | 212742.42 | 0 | (4 373.87) | 164.84 | 0 |
| 07/31/2015 | | 36.71 | | Waive/Adjust Late Charge | | 4621.71 | 0 | 0 | 0 | 36.71 | 0 | 212742.42 | 0 | (4 373.87) | 128.13 | 0 |
| 07/31/2015 | | 36.71 | | Waive/Adjust Late Charge | | 4621.71 | 0 | 0 | 0 | 36.71 | 0 | 212742.42 | 0 | (4 373.87) | 91.42 | 0 |
| 07/31/2015 | | 36.71 | | Waive/Adjust Late Charge | | 4621.71 | 0 | 0 | 0 | 36.71 | 0 | 212742.42 | 0 | (4 373.87) | 54.71 | 0 |
| 08/01/2015 | 1540.57 | | | Monthly Assessment | | 6162.28 | 0 | 0 | 0 | 0 | 0 | 212742.42 | 0 | (4 373.87) | 54.71 | 0 |
| 08/16/2015 | | | 36.71 | Assessed Late Charge | | 6162.28 | 0 | 0 | 0 | 36.71 | 0 | 212742.42 | 0 | (4 373.87) | 91.42 | 0 |
| 08/31/2015 | | 1550 | | Miscellaneous Payment | | 6162.28 | 0 | 0 | 0 | 0 | 1550 | 212742.42 | 0 | (4 373.87) | 91.42 | 1550 |
| 08/31/2015 | | -1540.57 | | Miscellaneous Payment | | 6162.28 | 0 | 0 | 0 | 0 | -1540.57 | 212742.42 | 0 | (4 373.87) | 91.42 | 9.43 |
| 08/31/2015 | | 1540.57 | | Monthly Payment | 06/01/2015 | 4621.71 | 379.74 | 354.57 | 806.26 | 0 | 0 | 212362.68 | 0 | (3 567.61) | 91.42 | 9.43 |
| 09/01/2015 | 1540.57 | | | Monthly Assessment | | 6162.28 | 0 | 0 | 0 | 0 | 0 | 212362.68 | 0 | (3 567.61) | 91.42 | 9.43 |

**Mortgage Proof of Claim Attachment**

**Mortgage Proof of Claim Attachment: Additional Page** (12/15)

Case number: 2:16-bk-17571-BR

Debtor 1: ALVARO A BAUTISTA

## Part 5 : Loan Payment History from First Date of Default

| | | Account Activity | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| 09/11/2015 | | 2000 | | Miscellaneous Payment | | 6162.28 | 0 | 0 | 0 | 0 | 2000 | 212362.68 | 0 | (3 567.61) | 91.42 | 2009.43 |
| 09/11/2015 | | -1540.57 | | Miscellaneous Payment | | 6162.28 | 0 | 0 | 0 | 0 | -1540.57 | 212362.68 | 0 | (3 567.61) | 91.42 | 468.86 |
| 09/11/2015 | | 1540.57 | | Monthly Payment | 07/01/2015 | 4621.71 | 380.37 | 353.94 | 806.26 | 0 | 0 | 211982.31 | 0 | (2 761.35) | 91.42 | 468.86 |
| 10/01/2015 | 1540.57 | | | Monthly Assessment | | 6162.28 | 0 | 0 | 0 | 0 | 0 | 211982.31 | 0 | (2 761.35) | 91.42 | 468.86 |
| 10/30/2015 | | | 15 | INSPECTION-OCCUPIED | | 6162.28 | 0 | 0 | 0 | 15 | 0 | 211982.31 | 0 | (2 761.35) | 106.42 | 468.86 |
| 11/01/2015 | 1540.57 | | | Monthly Assessment | | 7702.85 | 0 | 0 | 0 | 0 | 0 | 211982.31 | 0 | (2 761.35) | 106.42 | 468.86 |
| 11/03/2015 | | 1600 | | Monthly Payment | 08/01/2015 | 6162.28 | 381.01 | 353.3 | 806.26 | 0 | 59.43 | 211601.3 | 0 | (1 955.09) | 106.42 | 528.29 |
| 11/20/2015 | | 36.71 | | Waive/Adjust Late Charge | | 6162.28 | 0 | 0 | 0 | 36.71 | 0 | 211601.3 | 0 | (1 955.09) | 69.71 | 528.29 |
| 11/20/2015 | | 36.71 | | Waive/Adjust Late Charge | | 6162.28 | 0 | 0 | 0 | 36.71 | 0 | 211601.3 | 0 | (1 955.09) | 33 | 528.29 |
| 11/27/2015 | | | 3904.78 | County Taxes | | 6162.28 | 0 | 0 | -3904.78 | 0 | 0 | 211601.3 | 0 | (5 859.87) | 33 | 528.29 |
| 12/01/2015 | 1540.57 | | | Monthly Assessment | | 7702.85 | 0 | 0 | 0 | 0 | 0 | 211601.3 | 0 | (5 859.87) | 33 | 528.29 |
| 12/08/2015 | | 1012.28 | | Miscellaneous Payment | | 7702.85 | 0 | 0 | 0 | 0 | 1012.28 | 211601.3 | 0 | (5 859.87) | 33 | 1540.57 |
| 01/01/2016 | 1438.28 | | | Monthly Assessment | | 9141.13 | 0 | 0 | 0 | 0 | 0 | 211601.3 | 0 | (5 859.87) | 33 | 1540.57 |
| 01/04/2016 | | 1438.28 | | Miscellaneous Payment | | 9141.13 | 0 | 0 | 0 | 0 | 1438.28 | 211601.3 | 0 | (5 859.87) | 33 | 2978.85 |
| 01/04/2016 | | -1540.57 | | Miscellaneous Payment | | 9141.13 | 0 | 0 | 0 | 0 | -1540.57 | 211601.3 | 0 | (5 859.87) | 33 | 1438.28 |
| 01/04/2016 | | 1540.57 | | Monthly Payment | 09/01/2015 | 7600.56 | 381.64 | 352.67 | 806.26 | 0 | 0 | 211219.66 | 0 | (5 053.61) | 33 | 1438.28 |
| 02/01/2016 | 1438.28 | | | Monthly Assessment | | 9038.84 | 0 | 0 | 0 | 0 | 0 | 211219.66 | 0 | (5 053.61) | 33 | 1438.28 |
| 02/10/2016 | | 1438.28 | | Miscellaneous Payment | | 9038.84 | 0 | 0 | 0 | 0 | 1438.28 | 211219.66 | 0 | (5 053.61) | 33 | 2876.56 |
| 02/10/2016 | | -1540.57 | | Miscellaneous Payment | | 9038.84 | 0 | 0 | 0 | 0 | -1540.57 | 211219.66 | 0 | (5 053.61) | 33 | 1335.99 |
| 02/10/2016 | | 1540.57 | | Monthly Payment | 10/01/2015 | 7498.27 | 382.28 | 352.03 | 806.26 | 0 | 0 | 210837.38 | 0 | (4 247.35) | 33 | 1335.99 |
| 03/01/2016 | 1438.28 | | | Monthly Assessment | | 8936.55 | 0 | 0 | 0 | 0 | 0 | 210837.38 | 0 | (4 247.35) | 33 | 1335.99 |
| 03/08/2016 | | 1438.28 | | Miscellaneous Payment | | 8936.55 | 0 | 0 | 0 | 0 | 1438.28 | 210837.38 | 0 | (4 247.35) | 33 | 2774.27 |

**Mortgage Proof of Claim Attachment: Additional Page** (12/15)

Case number: 2:16-bk-17571-BR

Debtor 1: ALVARO A BAUTISTA

**Part 5 : Loan Payment History from First Date of Default**

| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **Account Activity** | | | | **How Funds Were Applied/Amount Incurred** | | | | | **Balance After Amount Received or Incurred** | | | |
| 03/08/2016 | | -1540.57 | | Miscellaneous Payment | | 8936.55 | 0 | 0 | 0 | 0 | -1540.57 | 210837.38 | 0 | (4 247.35) | 33 | 1233.7 |
| 03/08/2016 | | 1540.57 | | Monthly Payment | 11/01/2015 | 7395.98 | 382.91 | 351.4 | 806.26 | 0 | 0 | 210454.47 | 0 | (3 441.09) | 33 | 1233.7 |
| 03/29/2016 | | | 667.48 | 1st Mortgage Hazard Insurance | | 7395.98 | 0 | 0 | -667.48 | 0 | 0 | 210454.47 | 0 | (4 108.57) | 33 | 1233.7 |
| 03/31/2016 | | | 717.11 | County Taxes | | 7395.98 | 0 | 0 | -717.11 | 0 | 0 | 210454.47 | 0 | (4 825.68) | 33 | 1233.7 |
| 04/01/2016 | 1438.28 | | | Monthly Assessment | | 8834.26 | 0 | 0 | 0 | 0 | 0 | 210454.47 | 0 | (4 825.68) | 33 | 1233.7 |
| 04/06/2016 | | 1438.28 | | Miscellaneous Payment | | 8834.26 | 0 | 0 | 0 | 0 | 1438.28 | 210454.47 | 0 | (4 825.68) | 33 | 2671.98 |
| 04/06/2016 | | -1540.57 | | Miscellaneous Payment | | 8834.26 | 0 | 0 | 0 | 0 | -1540.57 | 210454.47 | 0 | (4 825.68) | 33 | 1131.41 |
| 04/06/2016 | | 1540.57 | | Monthly Payment | 12/01/2015 | 7293.69 | 383.55 | 350.76 | 806.26 | 0 | 0 | 210070.92 | 0 | (4 019.42) | 33 | 1131.41 |
| 05/01/2016 | 1438.28 | | | Monthly Assessment | | 8731.97 | 0 | 0 | 0 | 0 | 0 | 210070.92 | 0 | (4 019.42) | 33 | 1131.41 |
| 05/14/2016 | | 1438.28 | | Miscellaneous Payment | | 8731.97 | 0 | 0 | 0 | 0 | 1438.28 | 210070.92 | 0 | (4 019.42) | 33 | 2569.69 |
| 05/14/2016 | | -1540.57 | | Miscellaneous Payment | | 8731.97 | 0 | 0 | 0 | 0 | -1540.57 | 210070.92 | 0 | (4 019.42) | 33 | 1029.12 |
| 05/14/2016 | | 1540.57 | | Monthly Payment | 01/01/2016 | 7191.4 | 384.19 | 350.12 | 806.26 | 0 | 0 | 209686.73 | 0 | (3 213.16) | 33 | 1029.12 |
| 06/01/2016 | 1438.28 | | | Monthly Assessment | | 8629.68 | 0 | 0 | 0 | 0 | 0 | 209686.73 | 0 | (3 213.16) | 33 | 1029.12 |

# A L D R I D G E | P I T E
### LLP

Alaska Arizona California Florida Georgia Hawaii Idaho Nevada New Mexico Oregon Texas Utah Washington

## PROOF OF CLAIM DISCLOSURES

### IN RE: **BAUTISTA, ALVARO A.**
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

CASE NO. 2:16-BK-17571-BR
CREDITOR:  BANK OF AMERICA, N.A.

1. The amount of the post-petition payments is subject to change per the terms of the Note and Deed of Trust/Mortgage.
2. This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004 notwithstanding Aldridge Pite, LLP's participation in this proceeding. Moreover, the within party does not authorize Aldridge Pite, LLP, either expressly or impliedly through Aldridge Pite, LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R. Bankr. P. 7004.

REPRESENTATION OF PRINTED DOCUMENT

1 of 6

**Bank of America**

**Home Loans**

*CUSTOMER SERVICE*
*P.O. BOX 5170*
*SIMI VALLEY, CA  93062-5170*

| | |
|---|---|
| | **Notice Date:** 06/14/2016 |
| ALVARO BAUTISTA<br>9219 DOWNEY AVE<br>DOWNEY     CA    90240 | **Loan No.:** |
| | **Property Address:**<br>8818-8818 1/2 S COMPTON AVE<br>LOS ANGELES, CA  90002 |

# We've made some changes to your escrow account disclosure statement.

We've updated the statement to make it easier to read and to more clearly communicate account changes.

With the new statement, you'll see:

- A breakdown of your last escrow analysis, current escrow analysis, and any available options

- Details on how we calculate and determine escrow shortages, escrow overages, and escrow reserves

- Tax and insurance increases and decreases affecting your monthly escrow payment

- A Frequently Asked Questions page with answers to some commonly asked questions

# We're here to help

If you have any questions, please call us at ▇▇▇▇▇▇ Monday-Friday 7a.m. to 7p.m. Local Time. We appreciate the opportunity to serve your home loan needs.

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector. If you are currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged debt.

INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

This page is left blank intentionally.

3 of 6


**Bank of America**
**Home Loans**

| | Account Number ███ | Statement Date 06/14/2016 |

*CUSTOMER SERVICE*
*P.O. BOX 5170*
*SIMI VALLEY, CA  93062-5170*

**Escrow Account Disclosure Statement**

**Notice of New Mortgage Payment**

ALVARO BAUTISTA
9219 DOWNEY AVE
DOWNEY          CA          90240

| | |
|---|---|
| **Statement Date** | 06/14/2016 |
| **Loan number** | ███ |
| **New payment effective date** | 07/01/2016 |
| **New payment amount** | $1,175.09 |
| **Property Address:** | |
| | 8818-8818 1/2 S COMPTON AVE |
| **Customer service:** | ███ |
| **Customer service hours:** | Monday-Friday |

7a.m. to 7p.m. Local Time

Dear ALVARO BAUTISTA:

We recently reviewed your Escrow Account to ensure the escrow portion of your mortgage payment was enough to cover your next year's tax and/or insurance disbursements. As a result, we determined your escrow account is adequately funded and there are no changes to your monthly payment.

**Your New Monthly Payment will be $1,175.09 effective 07/01/2016**

| Breakdown | Last Analysis | Current Analysis |
|---|---|---|
| **Principal and/or interest** | **$734.31** | **$734.31** |
| **Total Escrow payment** | **$703.97** | **$440.78** |
| Tax | 650.80 | 385.16 |
| Insurance | 53.18 | 55.62 |
| MIP/PMI | .00 | .00 |
| Escrow reserve payment | .00 | .00 |
| Escrow shortage payment | .00 | .00 |
| **Optional Products** | **$0.00** | **$0.00** |
| **Buydown Assistance** | **$0.00** | **$0.00** |
| **Total Payment Amount** | **$1,438.28** | **$1,175.09** |

*Important Reminder:  If you pay your mortgage through a third-party online bill pay provider (instead of using our ACH service), please notify the bill pay provider of the change in monthly payment.*

Bank of America, N.A.is required by law to inform you that this communication is from a debt collector. If you are currently in a bankruptcy proceeding or have previously obtained a discharge of this debt under bankruptcy law, this notice is for informational purposes only and is not an attempt to collect a debt, a demand for payment or an attempt to impose personal liability for a discharged debt.

| Account Number | ██████ | Statement Date | 06/14/2016 |
|---|---|---|---|

## Your projected escrow account activity over the next 12 months (assuming all payments have been made)

| Month | Escrow deposit(s) | Tax payment(s) | Insurance payment(s) | MIP/PMI Payment(s) | Balance | |
|---|---|---|---|---|---|---|
| **Beginning balance** | | | | | **$2,578.92** | D |
| **July 2016** | 440.78 | | | | 3,019.70 | |
| **August 2016** | 440.78 | | | | 3,460.48 | |
| **September 2016** | 440.78 | | | | 3,901.26 | |
| **October 2016** | 440.78 | | | | 4,342.04 | |
| **November 2016** | 440.78 | 3,904.78 | | | 878.04 | * |
| **December 2016** | 440.78 | | | | 1,318.82 | |
| **January 2017** | 440.78 | | | | 1,759.60 | |
| **February 2017** | 440.78 | | | | 2,200.38 | |
| **March 2017** | 440.78 | 717.11 | | | 1,924.05 | |
| **April 2017** | 440.78 | | 667.48 | | 1,697.35 | |
| **May 2017** | 440.78 | | | | 2,138.13 | |
| **June 2017** | 440.78 | | | | 2,578.91 | |
| **Ending balance** | | | | | **$2,578.91** | |

\* Projected lowest balance: The point during the analysis period where the escrow balance will reach its lowest point.

### How we calculate your escrow reserve requirement:

Escrow annual total disbursement amount of 5,289.37, less the PMI amount (if applicable) = .00, multiplied by the reserve percentage (16.6%) = $878.04.

| | |
|---|---|
| Annual projected lowest balance | 878.04 |
| Total yearly reserve payment | 878.04 |
| Additional amount required (reserve minus projected lowest bal) | .00 |
| **Monthly escrow reserve payment** | .00 |

Note: Federal law allows for collection of a reserve amount to maintain a cushion for unexpected tax and/or insurance increases and other costs.

If your projected lowest balance is lower than your total yearly reserve requirement but covers a portion of the total yearly reserve requirement, only the difference will be collected on a monthly basis.

If your projected lowest balance is higher than the total annual reserve amount, a monthly collection for the reserve is not required.

### How we determine your new monthly payment amount:

| | |
|---|---|
| Principal and/or interest | $734.31 |
| Escrow payment (includes taxes/insurance, MIP/PMI, Reserve) | $440.78 |
| Optional products | $0.00 |
| Buydown assistance | $0.00 |
| **Total monthly payment effective 07/01/2016** | **$1,175.09** |

### Last Year in Review
**Side-by-side comparison of the projected escrow account activity and actual escrow activity since your last analysis.**

#### Projected vs. Actual Transactions

| *Projected* | | | | | *Actual* | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Date | Activity | Paid in | Paid out | Balance | Date | Activity | Paid in | Paid out | Balance |
| | Beginning balance | | | -$1,828.57 | | Beginning balance | | | -$5,859.87 |
| | Esc/Refund | 5,023.74 | | 3,195.17 | 01/07/2016 | Aug Payment | 806.26 | | -5,053.61 * |
| 01/01/2016 | Jan Payment | 703.97 | | 3,899.14 | 02/16/2016 | Sep Payment | 806.26 | | -4,247.35 |

| Account Number | ▉▉▉▉▉ | Statement Date | 06/14/2016 |

## Projected vs. Actual Transactions (continued)

*Projected*                                           *Actual*

| Date | Activity | Paid in | Paid out | Balance | Date | Activity | Paid in | Paid out | Balance |
|------|----------|---------|----------|---------|------|----------|---------|----------|---------|
| 02/01/2016 | Feb Payment | 703.97 | | 4,603.11 | 03/08/2016 | Oct Payment | 806.26 | | -3,441.09 |
| 03/01/2016 | Mar Payment | 703.97 | | 5,307.08 | 03/29/2016 | Homeowners ins pmt | | 667.48 | -4,108.57 |
| 03/02/2016 | County taxes | | 3,904.77 | 1,402.31 * | 03/31/2016 | County tax pmt | | 717.11 | -4,825.68 |
| 04/01/2016 | Apr Payment | 703.97 | | 2,106.28 | 04/06/2016 | Nov Payment | 806.26 | | -4,019.42 |
| 04/02/2016 | Homeowners insurance | | 638.13 | 1,468.15 | 05/16/2016 | Dec Payment | 806.26 | | -3,213.16 |
| 05/01/2016 | May Payment | 703.97 | | 2,172.12 | 06/14/2016 | Jan Payment | 703.97 | | -2,509.19 P |
| 06/01/2016 | Jun Payment | 703.97 | | 2,876.09 | 06/14/2016 | Feb Payment | 703.97 | | -1,805.22 P |
| 07/01/2016 | Jul Payment | 703.97 | | 3,580.06 | 06/14/2016 | Mar Payment | 703.97 | | -1,101.25 P |
| 08/01/2016 | Aug Payment | 703.97 | | 4,284.03 | 06/14/2016 | Misc. posting | 1,568.26 | | 467.01 P |
| 09/01/2016 | Sep Payment | 703.97 | | 4,988.00 | | Ending balance | | | $467.01 D |
| 10/01/2016 | Oct Payment | 703.97 | | 5,691.97 | | | | | |
| 11/01/2016 | Nov Payment | 703.97 | | 6,395.94 | | | | | |
| 11/02/2016 | County taxes | | 3,904.78 | 2,491.16 | | | | | |
| 12/01/2016 | Dec Payment | 703.97 | | 3,195.13 | | | | | |
| | Ending balance | | | $3,195.13 | | | | | |

| Summary of escrow payments and disbursements | | Summary of escrow payments and disbursements | |
|---|---|---|---|
| County taxes | 7,809.55 | County taxes | 717.11 |
| Homeowners insurance | 638.13 | Homeowners insurance | 667.48 |
| Payments | 8,447.64 | Payments | 6,143.21 |
| Esc/Refund | 5,023.74 | Misc posting | 1,568.26 |

\* Lowest projected balance

D - The letter (D) beside the escrow balance amount indicates that your mortgage payments are delinquent and the Beginning Balance from "Your projected escrow activity over the next 12 months" will not match the Actual Ending Balance from the "Last Year in Review" section.

P - The letter (P) beside an amount indicates that the payment or disbursement has not yet occurred but is estimated to occur as shown.

At the time of analysis, Bank of America, N.A assumes that all scheduled mortgage payments will be made to the effective date of your new payment.

Bank of America and the Bank of America logo are registered trademarks of Bank of America Corporation. Bank of America, N.A. Member FDIC.  Equal Housing Lender ⌂. © 2016 Bank of America Corporation

REPRESENTATION OF PRINTED DOCUMENT

# FREQUENTLY ASKED QUESTIONS

Q - **Why am I receiving this Escrow Account Disclosure Statement?**

A - Your escrow payment amount for the upcoming year may be changing due to increased or decreased taxes and/or insurance. This statement provides details about any payment changes.

Q - **What is an Escrow Analysis?**

A - Escrow analysis is a review of your current escrow activity to determine if the monthly escrow payment amount needs to be adjusted for the upcoming year's tax and/or insurance obligations. An analysis is done at least once a year.

Q - **What are the most common reasons for my escrow payment change?**

A - The most common reasons for a payment change are changes to your property taxes and/or insurance premiums for the upcoming year.

Q - **What is an Escrow Overage?**

A - An Escrow Overage is extra funds in your escrow account identified during an Escrow Analysis. If the loan is current, amounts of $50 or more will be refunded with a check mailed within 30 days of the analysis. Amounts less than $50 stay in the escrow account, and are applied to reduce your next year's monthly payments.

Q - **What is an Escrow Shortage?**

A - An Escrow Shortage is the lowest escrow account balance following an Escrow Analysis that falls short of the targeted balance needed for next year's disbursements (generally due to increased taxes and/or insurance). See page one for any applicable repayment options available to you.

Q - **How can I question or dispute a change in tax or insurance payments that increased my monthly escrow payment?**

A - Contact your local tax authority or insurance agent with questions about any tax or insurance payment changes.

Q - **Can I include my Escrow Shortage amount with my monthly mortgage payment?**

A - No, the escrow shortage amount must be sent separately, along with the payment coupon at the bottom of page one.

INTERNET REPRINT

LOAN # ▇▇▇▇▇▇▇

# ADJUSTABLE RATE NOTE

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

DECEMBER 24, 2007           LOS ANGELES                              CA
[Date]                                    [City]                          [State]
8818-8818 1/2 SOUTH COMPTON AVENUE, LOS ANGELES, CA 90002

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      444,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.500      %. The interest rate I will pay will change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note. Interest will be calculated on a      360 DAY  basis.

## 3. PAYMENTS

*(Please check box for interest-only payments.)*
☐ Beginning on the                       day of                        and on the
day of every month thereafter until the                        day of                        , I will pay only the interest on the unpaid principal balance of the Note. Thereafter, I will pay principal and interest by making payments every month as provided below.

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the        FIRST                day of each month beginning on FEBRUARY 01, 2008
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   JANUARY 01, 2048                    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at   BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404
or at a different place if required by the Note Holder.

MULTISTATE ADJUSTABLE RATE NOTE – Single Family

Page 1 of 6

BS899N  (0301)                            VMP MORTGAGE FORMS – (80



**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 2,599.43 . This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the FIRST day of JANUARY, 2018 , and on that day every 12TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is:
THE ONE-YEAR LONDON INTERBANK OFFERED RATE ("LIBOR") WHICH IS THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE-YEAR U.S. DOLLAR-DENOMINATED DEPOSITS IN THE LONDON MARKET, AS PUBLISHED IN THE WALL STREET JOURNAL. THE MOST RECENT INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE "CURRENT INDEX."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the ☐ Nearest ☒ Next Highest ☐ Next Lowest ONE-EIGHTH OF ONE PERCENTAGE POINT ( 0.125 %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

☐ The "Interest-Only Period" is the period from the date of this Note through .
For the Interest-Only Period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the Interest-Only Period. For the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

*(Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes.)*

☐ (1) There will be no maximum limit on interest rate changes.

|   | (2) | The interest rate I am required to pay at the first Change Date will not be greater than _____ % or less than _____ %. |
|---|-----|---|

|   | (3) | My interest rate will never be increased or decreased on any single Change Date by more than _____ percentage points ( _____ %) from the rate of interest I have been paying for the preceding period. |
|---|-----|---|

|   | (4) | My interest rate will never be greater than _____11.500_____ %, which is called the "Maximum Rate." |
|---|-----|---|

|   | (5) | My interest rate will never be less than _____ %, which is called the "Minimum Rate." |
|---|-----|---|

|   | (6) | My interest rate will never be less than the initial interest rate. |
|---|-----|---|

|   | (7) | The interest rate I am required to pay at the first Change Date will not be greater than 11.500 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding period. |
|---|-----|---|

[Checkboxes: (2) unchecked, (3) unchecked, (4) checked X, (5) unchecked, (6) unchecked, (7) checked X]

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATE OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES. MY PARTIAL PREPAYMENT MAY REDUCE THE AMOUNT OF MY MONTHLY PAYMENTS AFTER THE FIRST RATE CHANGE DATE FOLLOWING MY PARTIAL PREPAYMENT. HOWEVER, ANY REDUCTION DUE TO MY PARTIAL PREPAYMENT MAY BE OFFSET BY AN INTEREST RATE INCREASE.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be         5.0                % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(B) BELOW SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL READ AS FOLLOWS:

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER. AS USED IN THIS SECTION 18, "INTEREST IN THE PROPERTY" MEANS ANY LEGAL OR BENEFICIAL INTEREST IN THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THOSE BENEFICIAL INTERESTS TRANSFERRED IN A BOND FOR DEED, CONTRACT FOR DEED, INSTALLMENT SALES CONTRACT OR ESCROW AGREEMENT, THE INTENT OF WHICH IS THE TRANSFER OF TITLE BY BORROWER AT A FUTURE DATE TO A PURCHASER.

IF ALL OR ANY PART OF THE PROPERTY OR ANY INTEREST IN THE PROPERTY IS SOLD OR TRANSFERRED (OR IF BORROWER IS NOT A NATURAL PERSON AND A BENEFICIAL INTEREST IN BORROWER IS SOLD OR TRANSFERRED) WITHOUT LENDER'S PRIOR WRITTEN CONSENT, LENDER MAY REQUIRE IMMEDIATE PAYMENT IN FULL OF ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. HOWEVER, THIS OPTION SHALL NOT BE EXERCISED BY LENDER IF EXERCISE IS PROHIBITED BY APPLICABLE LAW.

IF LENDER EXERCISES THIS OPTION, LENDER SHALL GIVE BORROWER NOTICE OF ACCELERATION. THE NOTICE SHALL PROVIDE A PERIOD OF NOT LESS THAN 30 DAYS FROM THE DATE THE NOTICE IS GIVEN IN ACCORDANCE WITH SECTION 15 WITHIN WHICH BORROWER MUST PAY ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. IF BORROWER FAILS TO PAY THESE SUMS PRIOR TO THE EXPIRATION OF THIS PERIOD, LENDER MAY INVOKE ANY REMEDIES PERMITTED BY THIS SECURITY INSTRUMENT WITHOUT FURTHER NOTICE OR DEMAND ON BORROWER.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ALVARO BAUTISTA                                         –Borrower

_____ (Seal)
                                                        –Borrower

_____ (Seal)
                                                        –Borrower

_____ (Seal)
                                                        –Borrower

PAY TO THE ORDER OF
_____ (Seal)
                                                        –Borrower
WITHOUT RECOURSE
Bank of America, N.A.
_____ (Seal)
                                                        –Borrower
BY _____
CHRISTINA M. SCHMITT
ASSISTANT VICE PRESIDENT
_____ (Seal)
                                                        –Borrower

_____ (Seal)
                                                        –Borrower

*(Sign Original Only)*

BS899N  (0301)                    Page 6 of 6



**This page is part of your document - DO NOT DISCARD**





**20072862277**    **Pages: 027**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/31/07 AT 08:00AM**

Fee: 88.00
Tax: 0.00
Other: 0.00

Total: 88.00

**Title Company**

## TITLE(S) :

**L E A D   S H E E T**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

Recording Requested By:
BANK OF AMERICA

Return To:
LOAN # ███████

JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256



12/31/07

**20072862277**

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

LOAN # ███████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   DECEMBER 24, 2007   , together with all Riders to this document.
**(B) "Borrower"** is ALVARO BAUTISTA

Borrower's address is     8611 MOUNTAIN VIEW APT C, SOUTH GATE, CA   90280

. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of   THE UNITED STATES OF AMERICA

**CALIFORNIA** – Single Family

Page 1 of 15

**BS6(CA)**   (0207)            VMP Mortgage Solutions ███████

Lender's address is 275 S.VALENCIA AVE. 1ST FLOOR, BREA, CA 928236340

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is PRLAP, INC.

**(E) "Note"** means the promissory note signed by Borrower and dated DECEMBER 24, 2007
The Note states that Borrower owes Lender FOUR HUNDRED FORTY FOUR THOUSAND AND
00/100                                                                                    Dollars
(U.S. $      444,000.00     ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  JANUARY 01, 2048             .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights
in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [X] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                 of LOS ANGELES                          :

        [Type of Recording Jurisdiction]             [Name of Recording Jurisdiction]

"SEE ATTACHED EXHIBIT A."

Parcel ID Number: 6044-004-006             which currently has the address of
8818-8818 1/2 SOUTH COMPTON AVENUE                      [Street]
LOS ANGELES               [City] , California 90002   [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

BS6(CA)  (0207)                      Page 3 of 15

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

BS6(CA)   (0207)                    Page 5 of 15

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one‑time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one‑time charge for flood zone determination, certification and tracking services; or (b) a one‑time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

BS6(CA)   (0207)                              Page 6 of 15

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

BS6(CA)   (0207)                              Page 7 of 15

*9*

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

07 2862277

*10*

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

BS6(CA)  (0207)                                    Page 9 of 15

*11*

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

BS6(CA)   (0207)                                      Page 10 of 15

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

*13*

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

**BS6(CA)**    (0207)    Page 12 of 15

07 28652277

14

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

**BS6(CA)**  (0207)                            Page 13 of 15

*15*

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                   ALVARO BAUTISTA          -Borrower

_____          _____ (Seal)
                                                            -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                   -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                   -Borrower

_____ (Seal)   _____ (Seal)
                -Borrower                                   -Borrower

BS6(CA)   (0207)                        Page 14 of 15

*16*

State of California
County of Los Angeles

} ss.

On December 26, 2007

before me, Ana L. Ramirez De Cardenas, Notary Public
personally appeared

Alvaro Bautista

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____ (Seal)

ANA L. RAMIREZ DE CARDENAS
Commission # ▬▬▬
Notary Public - California
Los Angeles County
My Comm. Expires Apr 23, 2009

07 28652277

BS6(CA)  (0207)                    Page 15 of 15

17

LOAN # ████████

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this  24TH  day of DECEMBER, 2007  ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note")
to BANK OF AMERICA, N.A.

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at: 8818-8818 1/2 SOUTH COMPTON AVENUE, LOS ANGELES, CA
90002

(Property Address)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE
INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN
THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of      6.500      %. The Note
provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
   The interest rate I will pay may change on the  FIRST  day of JANUARY, 2018
   , and on that day every    12TH    month thereafter. Each date on which my
interest rate could change is called a "Change Date."

   **(B) The Index**
   Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is:

**MULTISTATE ADJUSTABLE RATE RIDER** – Single Family  ████████████
                         Page 1 of 6
**BS899R** (0402)        VMP Mortgage Solutions, Inc. ██████████

07 28622277

THE ONE-YEAR LONDON INTERBANK OFFERED RATE ("LIBOR") WHICH IS THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE-YEAR U.S. DOLLAR-DENOMINATED DEPOSITS IN THE LONDON MARKET, AS PUBLISHED IN THE WALL STREET JOURNAL.  THE MOST RECENT INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE "CURRENT INDEX."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-QUARTER                                         percentage points (      2.250            %) to the Current Index. The Note Holder will then round the result of this addition to the ☐ Nearest  ☒ Next Highest ☐ Next Lowest ONE-EIGHTH OF ONE PERCENTAGE POINT           (        0.125          %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

☐ **Interest-Only Period**
The "Interest-only Period" is the period from the date of this Note through            . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.
The "Amortization Period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

BS899R (0402)                        Page 2 of 6                        ███████████

**(D) Limits on Interest Rate Changes**
**( Please check appropriate boxes; if no box is checked, there will be no**
**maximum limit on changes .)**

    ☐ (1) There will be no maximum limit on interest rate changes.

    ☐ (2) The interest rate I am required to pay at the first Change Date will not be
greater than               % or less than                  %.

    ☐ (3) My interest rate will never be increased or decreased on any single Change
Date by more than
percentage points (               %) from the rate of interest I
have been paying for the preceding period.

    ☒ (4) My interest rate will never be greater than 11.500        %, which is
called the "Maximum Rate."

    ☐ (5) My interest rate will never be less than            %, which is
called the "Minimum Rate."

    ☐ (6) My interest rate will never be less than the initial interest rate.

    ☒ (7) The interest rate I am required to pay at the first Change Date will not be
greater than     11.500     % or less than        2.250  %.
Thereafter, my interest rate will never be increased or decreased on any single
Change Date by more than TWO
                               percentage points (     2.000        %)
from the rate of interest I have been paying for the preceding period.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the
amount of my new monthly payment beginning on the first monthly payment date after
the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest
rate and the amount of my monthly payment before the effective date of any change.
The notice will include information required by law to be given to me and also the title
and telephone number of a person who will answer any question I may have regarding
the notice.

20

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:
(1) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE
INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM
COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B(2)
BELOW SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF
THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in
this Section 18, "Interest in the Property" means any legal or beneficial interest
in the Property, including, but not limited to, those beneficial interests
transferred in a bond for deed, contract for deed, installment sales contract or
escrow agreement, the intent of which is the transfer of the title by Borrower
at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or
transferred (or if a Borrower is not a natural person and a beneficial interest in
Borrower is sold or transferred) without Lender's prior written consent, Lender
may require immediate payment in full of all sums secured by this Security
Instrument. However, this option shall not be exercised by Lender if such
exercise is prohibited by Applicable Law. Lender also shall not exercise this
option if: (a) Borrower causes to be submitted to Lender information required
by Lender to evaluate the intended transferee as if a new loan were being made
to the transferee; and (b) Lender reasonably determines that Lender's security
will not be impaired by the loan assumption and that the risk of a breach of any
covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable
fee as a condition to Lender's consent to the loan assumption. Lender also may
require the transferee to sign an assumption agreement that is acceptable to
Lender and that obligates the transferee to keep all the promises and
agreements made in the Note and in this Security Instrument. Borrower will
continue to be obligated under the Note and this Security Instrument unless
Lender releases Borrower in writing.

BS899R (0402)                     Page 4 of 6

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(2) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL READ AS FOLLOWS:

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER.  AS USED IN THIS SECTION 18, "INTEREST IN THE PROPERTY" MEANS ANY LEGAL OR BENEFICIAL INTEREST IN THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THOSE BENEFICIAL INTERESTS TRANSFERRED IN A BOND FOR DEED, CONTRACT FOR DEED, INSTALLMENT SALES CONTRACT OR ESCROW AGREEMENT, THE INTENT OF WHICH IS THE TRANSFER OF TITLE BY BORROWER AT A FUTURE DATE TO A PURCHASER.

IF ALL OR ANY PART OF THE PROPERTY OR ANY INTEREST IN THE PROPERTY IS SOLD OR TRANSFERRED (OR IF BORROWER IS NOT A NATURAL PERSON AND A BENEFICIAL INTEREST IN BORROWER IS SOLD OR TRANSFERRED) WITHOUT LENDER'S PRIOR WRITTEN CONSENT, LENDER MAY REQUIRE IMMEDIATE PAYMENT IN FULL OF ALL SUMS SECURED BY THIS SECURITY INSTRUMENT.  HOWEVER, THIS OPTION SHALL NOT BE EXERCISED BY LENDER IF EXERCISE IS PROHIBITED BY APPLICABLE LAW.

IF LENDER EXERCISES THIS OPTION, LENDER SHALL GIVE BORROWER NOTICE OF ACCELERATION.  THE NOTICE SHALL PROVIDE A PERIOD OF NOT LESS THAN 30 DAYS FROM THE DATE THE NOTICE IS GIVEN IN ACCORDANCE WITH SECTION 15 WITHIN WHICH BORROWER MUST PAY ALL SUMS SECURED BY THIS SECURITY INSTRUMENT.  IF BORROWER FAILS TO PAY THESE SUMS PRIOR TO THE EXPIRATION OF THIS PERIOD, LENDER MAY INVOKE ANY REMEDIES PERMITTED BY THIS SECURITY INSTRUMENT WITHOUT FURTHER NOTICE OR DEMAND ON BORROWER.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
ALVARO BAUTISTA                                                      —Borrower

_____ (Seal)
                                                                              —Borrower

_____ (Seal)
                                                                              —Borrower

_____ (Seal)
                                                                              —Borrower

_____ (Seal)
                                                                              —Borrower

_____ (Seal)
                                                                              —Borrower

_____ (Seal)
                                                                              —Borrower

_____ (Seal)
                                                                              —Borrower

BS899R (0402)                    Page 6 of 6

LOAN # ███████

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this   24TH   day of  DECEMBER, 2007     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Note to BANK OF AMERICA,
N.A.

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at 8818-8818 1/2 SOUTH COMPTON AVENUE, LOS ANGELES, CA
90002

(Property Address)

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In
addition to the Property described in Security Instrument, the following items now or
hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security
Instrument: building materials, appliances and goods of every nature whatsoever now
or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and
extinguishing apparatus, security and access control apparatus, plumbing, bath tubs,
water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds,
shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached
floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument.
All of the foregoing together with the Property described in the Security Instrument
(or the leasehold estate if the Security Instrument is on a leasehold) are referred to in
this 1-4 Family Rider and the Security Instrument as the "Property."

**MULTISTATE 1-4 FAMILY RIDER**

Page 1 of 4
BS57R(CA) (0411)   VMP Mortgage Solutions, Inc. ███████████

07 2852277

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**F. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**G. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of

BS57R(CA) (0411)              Page 2 of 4

taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**H. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BS57R(CA) (0411)                    Page 3 of 4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
ALVARO BAUTISTA                                           -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

**BS57R(CA) (0411)**                    **Page 4 of 4**          ████████████

07 2862277

Order No. ███████

27

# LEGAL DESCRIPTION

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 130, of Putney Place, in the County of Los Angeles, State of California, as per map recorded in Book 12 Pages 124 of Maps, in the office of the County Recorder of said county.

Except therefrom all minerals, gas, oil, petroleum, naphtha and other hydrocarbon substances, in and under said land lying below a depth of 500 feet from the surface, without however the right of surface entry, as reserved or excepted in a deed recorded November 4, 1969 as Instrument No. 1316.

Assessor's Parcel No: 6044-004-006

CLTA Preliminary Report Form - Modified (11/17/06)

EXHIBIT B



**This page is part of your document - DO NOT DISCARD**



**20072862278**   Pages: 021

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/31/07 AT 08:00AM**

Fee:  70.00
Tax:  0.00
Other: 0.00
_____
Total: 70.00

**Title Company**

**TITLE(S) :**



L E A D    S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

-        -



**THIS FORM IS NOT TO BE DUPLICATED**



Recording Requested By:
BANK OF AMERICA

Return To:
LOAN # 6381613188
FL9-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT
JACKSONVILLE, FL 32256



12/31/07

**20072862278**

———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST    LOAN #6381613188

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    DECEMBER 24, 2007    , together with all Riders to this document.
**(B) "Borrower"** is ALVARO BAUTISTA

ACCOMMODATION ONLY

Borrower's address is    8611 MOUNTAIN VIEW APT C, SOUTH GATE, CA   90280

. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is BANK OF AMERICA, N.A.

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of   THE UNITED STATES OF AMERICA

**CALIFORNIA** – Single Family

Page 1 of 15

**BS6(CA)** (0207)           VMP Mortgage Solutions (800)521-7291
  CVCA 12/24/07 1:26 PM 6381613188

THIS DEED OF TRUST IS SECOND
AND SUBORDINATE TO A FIRST
DEED OF TRUST RECORDING
CONCURRENTLY...

**3**

Lender's address is 275 S.VALENCIA AVE  1ST FLOOR, BREA, CA 928236340

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is  PRLAP, INC

**(E) "Note"** means the promissory note signed by Borrower and dated  DECEMBER 24, 2007 .
The Note states that Borrower owes Lender ONE HUNDRED ELEVEN THOUSAND AND 00/100
                                                                              Dollars
(U.S. $    111,000 00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  JANUARY 01, 2023
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights
in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well as
all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account. Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire
transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

BSB(CA)  (0207)                              Page 2 of 15
   CVCA 12/24/07 1:26 PM 6381613188

07 2862278

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                    of  LOS ANGELES                    .

[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

"SEE ATTACHED EXHIBIT A."

Parcel ID Number: 6044-004-006                    which currently has the address of
8818 1/2 SOUTH COMPTON AV                    [Street]
LOS ANGELES                    [City] , California 90002    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

BS6(CA)  (0207)            Page 3 of 15
CVCA 12/24/07 1.26 PM 6381613188

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

**BS6(CA)** (0207)
CVCA 12/24/07 1:26 PM 6381613188

Page 4 of 15

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9 If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

**BS6(CA)** (0207)
CVCA 12/24/07 1 26 PM 6381613188

Page 5 of 15

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

**BS6(CA)** (0207)

*Page 8 of 15*

CVCA 12/24/07 1:26 PM 6381613188

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

07 2862278

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

13

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

*14*

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

BS6(CA)  (0207)
CVCA 12/24/07 1.26 PM 6381613188

Page 13 of 15

*15*

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                         ALVARO BAUTISTA                -Borrower


_____        _____ (Seal)
                                                                       -Borrower


_____ (Seal)    _____ (Seal)
                     -Borrower                                          -Borrower


_____ (Seal)    _____ (Seal)
                     -Borrower                                          -Borrower


_____ (Seal)    _____ (Seal)
                     -Borrower                                          -Borrower


**BS6(CA)** (0207)                    Page 14 of 15
    CVCA 12/24/07 1:26 PM 6381613188

16

State of California
County of Los Angeles        } ss.

On December 26, 2007    before me, Ana L Ramirez De Cardenas, Notary Public
personally appeared

Alvaro Bautista

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____ (Seal)

ANA L. RAMIREZ DE CARDENAS
Commission # 1572050
Notary Public - California
Los Angeles County
My Comm. Expires Apr 23, 2009

BS6(CA)    (0207)                           Page 15 of 15
    CVCA 12/24/07 1:26 PM 6381613188

07 2862278

17

LOAN # 6381613188

# 1-4 FAMILY RIDER
### (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this    24TH    day of  DECEMBER, 2007          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Note to BANK OF AMERICA,
N A

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at: 8818 1/2 SOUTH COMPTON AV, LOS ANGELES, CA 90002

(Property Address)

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows.

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In
addition to the Property described in Security Instrument, the following items now or
hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security
Instrument: building materials, appliances and goods of every nature whatsoever now
or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and
extinguishing apparatus, security and access control apparatus, plumbing, bath tubs,
water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds,
shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached
floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument.
All of the foregoing together with the Property described in the Security Instrument
(or the leasehold estate if the Security Instrument is on a leasehold) are referred to in
this 1-4 Family Rider and the Security Instrument as the "Property."

**MULTISTATE 1-4 FAMILY RIDER**

Page 1 of 4        CA57 12/24/07 1.26 PM 6381613188
**BS57R(CA) (0411)**   VMP Mortgage Solutions, Inc (800)521-7291

*18*

**B.  USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.  SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.  RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5

**E.  BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**F.  ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**G.  ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of

*19*

taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**H.  CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BS57R(CA) (0411)          Page 3 of 4          CA57 12/24/07 1:26 PM 6381613188

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
ALVARO BAUTISTA                                          -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

_____ (Seal)
                                                         -Borrower

**BS57R(CA) (0411)**            **Page 4 of 4**          CA57 12/24/07 1.26 PM 6381613188

21

# LEGAL DESCRIPTION

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 130, of Putney Place, in the County of Los Angeles, State of California, as per map recorded in Book 12 Pages 124 of Maps, in the office of the County Recorder of said county.

Except therefrom all minerals, gas, oil, petroleum, naphtha and other hydrocarbon substances, in and under said land lying below a depth of 500 feet from the surface, without however the right of surface entry, as reserved or excepted in a deed recorded November 4, 1969 as Instrument No. 1316.

Assessor's Parcel No: 6044-004-006

**DECLARATION OF EXPERT WITNESS IN SUPPORT OF
MOTION FOR ORDER DETERMINING VALUE OF COLLATERAL**

I, _____ declare:

1. I am over 18 years of age, and I am qualified to testify as an expert witness in my capacity as a:
   - ☐  Licensed Residential Property Appraiser with license no. _____
   - ☐  Other: _____
     _____

2. Attached as Exhibit A to this declaration, is my report, which discloses all the data that I have used in forming my opinion.

3. My Opinion of the value of the Collateral is $ _____ as of *(applicable date)* _____ .

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____

*Signature*

_____

Printed Name

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*                                Page  7                        **F 3012-1.MOTION.VALUATION**

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**800 West 6th Street., Suite 940
Los Angeles, CA 90017**

A true and correct copy of the foregoing document entitled (*specify*):    **NOTICE OF MOTION AND MOTION FOR ORDER
DETERMINING VALUE OF COLLATERAL**    will be served or was served **(a)** on the judge in chambers in the form and manner
required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  **11/22/2016**    , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**ATTORNEY FOR CREDITOR** Todd S Garan ch11ecf@aldridgepite.com,
TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
**ATTORNEY FOR CREDITOR** Merdaud Jafarnia bknotice@mccarthyholthus.com,
mjafarnia@ecf.inforuptcy.com
**ATTORNEY FOR TRUSTEE** Ron Maroko ron.maroko@usdoj.gov
**ATTORNEY FOR CREDITOR** Cassandra J Richey cmartin@pralc.com
**ATTORNEY FOR CREDITOR** Edward A Treder cdcaecf@bdfgroup.com
**U.S. TRUSTEE** United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
**ATTORNEY FOR DEBTOR** Thomas B Ure tbuesq@aol.com, ThomasUre@aol.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On (*date*)  **11/22/2016**    , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  **11/22/2016**    , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**United States Bankruptcy Court
Honorable Barry Russell
255 E. Temple Street, Suite 1660 / Courtroom 1668
Los Angeles, CA 90012**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 11/22/2016 | **Yolanda Segura** | /s/ Yolanda Segura |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

*(Attached page to Proof of Service-please include any additional or alternative addresses and attach additional pages if needed)*
*(Certified Mail required for service on a national bank.)*

| Name of 1st Lienholder) **Bank of America, N.A.**<br><br>Agent for Service of Process (Name & Address)<br>**Attn: Brian T. Moynihan**<br>**100 North Tryon Street**<br>**Charlotte, NC 28202** | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☑ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☑ Certified Mail -<br>Tracking# **7012 3460 0000 2989 5475**<br>☐ Overnight Mail - Tracking#____<br>Carrier Name:____ |
| Name of 1st Lienholder)<br>**Bank of America**<br>**P.O. Box 31785**<br>**Tampa, FL 33631-3785**<br><br>Agent for Service of Process (Name & Address) | Address from:<br>☑ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☑ US Mail<br>☐ Certified Mail -<br>Tracking#____<br>☐ Overnight Mail -<br>Tracking#____<br>Carrier Name:____ |
| Name of 1st Lienholder<br><br>Agent for Service of Process (Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#____<br>☐ Overnight Mail -<br>Tracking#____<br>Carrier Name:____ |

| Name of 2nd Lienholder) **Bank of America, N.A.**<br><br>Agent for Service of Process (Name & Address)<br>**Attn: Brian T. Moynihan**<br>**100 North Tryon Street**<br>**Charlotte, NC 28202** | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☑ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☑ Certified Mail -<br>Tracking# **7012 3460 0000 2989 5475**<br>☐ Overnight Mail -<br>Tracking#____<br>Carrier Name:____ |
| Name of 2nd Lienholder)<br><br>Agent for Service of Process (Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#____<br>☐ Overnight Mail -<br>Tracking#____<br>Carrier Name:____ |
| Name of 2nd Lienholder<br><br>Agent for Service of Process (Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#____<br>☐ Overnight Mail -<br>Tracking#____<br>Carrier Name:____ |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2013                                                    Page 9                                    **F 3012-1.MOTION.VALUATION**

| Name of 3rd Lienholder)<br><br>Agent for Service of Process<br>(Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| Name of 3rd Lienholder)<br><br>Agent for Service of Process<br>(Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| Name of 3rd Lienholder)<br><br>Agent for Service of Process<br>(Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |

| Altnerative/Additional Address<br>(Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |
| Altnerative/Additional Address<br>(Name & Address) | Address from:<br>☐ Proof of Claim<br>☐ Secretary of State<br>☐ FDIC website<br>☐ Other: *specify* | Delivery Method<br>☐ US Mail<br>☐ Certified Mail -<br>Tracking#_____<br>☐ Overnight Mail -<br>Tracking#_____<br>Carrier Name:_____ |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2013*                                  Page 10                          **F 3012-1.MOTION.VALUATION**